### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-------------------------------x
THOMAS MAY,                     :
          Plaintiff,           :
                               :
     v.                        :  Case No. 3:06CV1888 (AWT)
                               :
MIGUEL DEJESUS, Correctional   :
Officer,                       :
          Defendant.           :
-------------------------------x
```

### <u>RULING ON MOTION FOR SUMMARY JUDGEMENT</u>

The plaintiff, Thomas May, who is currently incarcerated at Maine State Prison in Warren, Maine, commenced this civil rights action <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u> against the defendant, Correctional Officer Miguel DeJesus.  The plaintiff claims that the defendant deprived him of basic human needs in violation of the Eighth and Fourteenth Amendment, which resulted in physical injury and emotional distress.  The defendant has moved for summary judgment on all claims.  For the reasons set forth below, the motion for summary judgment is being granted.

### I.   Facts

In December 2004, the plaintiff underwent hemorrhoid surgery.  Following the surgery, Dr. Ruiz, a prison physician, prescribed Ducosate Sodium, a laxative, to be taken by the plaintiff twice a day from December 9, 2004 until March 29, 2005.

In March 2005, the defendant was employed as a Correctional Officer at Osborn Correctional Institution ("Osborn") in Somers, Connecticut where the plaintiff, a sentenced inmate, was

incarcerated.  On March 14, 2005, the plaintiff was scheduled to participate in a trial in a case filed in the United States Bankruptcy Court in New Haven, Connecticut.  Department of Correction officials assigned the defendant to transport the plaintiff in a prison van from Osborn to the Bankruptcy Court in New Haven, a distance of approximately 65 miles.  The plaintiff had taken his prescribed laxative medication prior to the trip to New Haven.  The plaintiff and the defendant were the only occupants in the prison van.  The plaintiff wore handcuffs and leg shackles during the trip to and from New Haven.

The plaintiff avers that, at the beginning of the trip to New Haven, the defendant did not ask him whether he had to use the bathroom and did not instruct him to use the bathroom.  The plaintiff avers that "[i]f [the defendant] had asked or instructed me, I would have told [the defendant] that I did not need to use a bathroom, because at that time I had no urge to defecate or urinate."  (Thomas J. May Affidavit (Doc. No. 27 Ex. 2) ("May Aff.") ¶ 9)  Approximately 45 to 60 minutes into the trip to New Haven, the plaintiff informed the defendant that he needed to defecate and asked the defendant to stop the van at the Cheshire Correctional Institution so that he could use the bathroom.  The defendant did not stop the van and the plaintiff defecated in his pants.  The plaintiff was forced to sit in his soiled pants for 15 to 30 minutes until the van arrived at the

courthouse in New Haven.

Upon his arrival at the courthouse, Deputy United States Marshals permitted the plaintiff to throw out his soiled pants, underwear and socks, take a shower and change into a new pair of pants.  The United States Marshals' Service did not provide the plaintiff with a new pair of socks.  The bankruptcy proceeding lasted approximately two hours.  Thereafter, the plaintiff was placed in leg shackles and handcuffs for the return trip to Osborn.

The plaintiff avers that, at the beginning of the return trip to Osborn, the defendant did not ask him whether he had to use the bathroom and did not instruct him to use the bathroom. The plaintiff avers that "[i]f [the defendant] had instructed or asked me, I would have told [the defendant] that I did not need to use a bathroom, because at that time I had no urge to urinate or defecate."  (May Aff. ¶ 29)  Approximately 60 minutes into the return trip, the plaintiff informed the defendant that he had to urinate and asked the defendant to stop the van at the Hartford Correctional Center or MacDougall-Walker Correctional Institution in Suffield so that he could use a bathroom.  The defendant did not stop the van and the plaintiff urinated in his pants.  The plaintiff sat in his urine-soaked pants for 15 to 30 minutes, before the van arrived at Osborn.  Upon his arrival at Osborn, the plaintiff was escorted back to his cell.

3

The plaintiff suffered a small abrasion, approximately 1/4 inch by 1/8 inch in size on his left ankle where the leg shackle rubbed against his skin during the return trip to Osborn.  On March 24, 2005, a nurse examined the plaintiff's ankle and noted a small, well-healed scab on the front of the ankle, no sign of infection, redness or swelling and excellent range of motion. The nurse recommended follow-up as needed.

## II.  Legal Standard

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is <u>both</u> genuine <u>and</u> related to a material fact. Therefore, the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248.  Only those facts that <u>must</u> be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  Immaterial or minor facts will not prevent summary judgment.  <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor."  <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000)(quoting <u>Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.</u>, 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment.  <u>Stern v. Trustees of Columbia University</u>, 131 F.3d 305, 315 (2d Cir.

5

1997) (quoting <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922
F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of
a scintilla of evidence in support of the [nonmovant's] position"
will be insufficient; there must be evidence on which a jury
could "reasonably find" for the nonmovant.  <u>Anderson</u>, 477 U.S. at
252.

Where one party is proceeding <u>pro se</u>, the court reads the
<u>pro se</u> party's papers liberally and interprets them to raise the
strongest arguments suggested therein.  <u>See</u> <u>Burgos v. Hopkins</u>, 14
F.3d 787, 790 (2d Cir. 1994).  Despite this liberal
interpretation, however, an unsupported assertion cannot overcome
a properly supported motion for summary judgment.  <u>Carey v.
Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991).

**III. Discussion**

The plaintiff contends that the defendant's failure to stop
the van on the way to and from the courthouse to permit him to
use the bathroom, which also resulted in injury from the
application of leg shackles to his bare ankles, constituted a
violation of his right to be free from unconstitutional
conditions of confinement.  The plaintiff also contends that he
suffered humiliation and emotional distress as a result of the
violation.[1]

_____

[1]Deliberate indifference by prison officials to a prisoner's
serious medical need constitutes cruel and unusual punishment in
violation of the Eighth Amendment.  <u>Estelle v. Gamble</u>, 429 U.S.

The defendant moves for summary judgment on the ground that the plaintiff has failed to produce evidence that could show he was subjected to unconstitutional conditions of confinement during the trip to and from the courthouse.

## A.   Constitutional Violation: Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993).  "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009).

In Gill v. Riddick, No. Civ. 9:03-CV-1456, 2005 WL 755745 (March 31, 2005), the court stated:

> A prisoner alleging that a certain prison condition constitutes cruel and unusual punishment must prove both an objective and subjective element, specifically, the inmate must show that the deprivation at issue is objectively sufficiently serious such that the plaintiff was denied the minimal civilized measure of

---

97, 104 (1976).  Although the plaintiff had undergone hemorrhoid surgery and was taking medication because of the surgery, he did not include a claim of deliberate indifference to medical needs in his complaint.  The court does not construe the complaint as raising such a claim because even if the plaintiff could prove his medical condition was serious, he does not contend that the defendant was aware of this medical condition or of the fact that the plaintiff was taking medication.  Thus, the plaintiff could not show that the defendant was deliberately indifferent to that condition.

> life's necessities, and that the defendant possessed a
> sufficiently culpable state of mind associated with the
> unnecessary and wanton infliction of pain. . . .  The
> objective component of an Eighth Amendment violation
> must be evaluated based on the severity of the
> deprivation imposed. . . .  When considering whether a
> particular condition is so serious as to invoke the
> Eighth Amendment, a court should assess the duration of
> the condition and the potential for serious physical
> harm. . . .  To prove the second, subjective component,
> a prisoner must establish that the person who inflicted
> the unconstitutional condition was deliberately
> indifferent to the severe deprivation.

Id., at *16(internal quotation marks and citations omitted).

"Because society does not expect or intend prison conditions to

be comfortable, only extreme deprivations are sufficient" to

state a claim of unconstitutional conditions of confinement.

Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999).

        The defendant contends that the plaintiff has not met either

the objective or the subjective component of the Eighth Amendment

test because, as to the objective component, he has not produced

evidence that he suffered an unconstitutional deprivation during

his trip to or from the courthouse in New Haven, and, as to the

subjective component, he has not produced evidence that the

defendant acted with the requisite state of mind.  The court

concludes that the plaintiff has failed to create a genuine issue

of fact as to the objective component and, for that reason, the

defendant is entitled to summary judgment.

        "To satisfy the objective component of an Eighth Amendment

conditions of confinement claim, Plaintiff must show that the

conditions alleged, either alone or in combination, deprive him of 'the minimal civilized measure of life's necessities,' such as adequate food, clothing, shelter, sanitation, medical care, and personal safety." <u>Alvarez v. County of Cumberland</u>, Civil No. 07-346(RBK), 2009 WL 750200, *4 (D.N.J. March 18, 2009)(citation omitted).  "To the extent that certain conditions are only 'restrictive' or 'harsh,' they are merely part of the penalty that criminal offenders pay for their offenses against society." <u>Id</u>.

In addition, an important consideration in determining whether a particular condition deprived an inmate of a basic human need or life necessity is the duration of the condition. <u>See</u> <u>e.g.,</u> <u>Smith v. Copeland</u>, 87 F.3d 265, 268 (8th Cir. 1996)(holding that inmate's confinement in cell for four days with overflowed toilet, during which time he endured stench of his own feces and urine, did not rise to level of Eighth Amendment violation); <u>Davis v. Scott</u>, 157 F.3d 1003, 1006 (5th Cir. 1998)(holding that inmate being placed in cell with blood on walls and excretion on floors for three days did not meet objective component of Eighth Amendment, especially in view of fact that cleaning supplies were made available to him); <u>Hutto v. Finney</u>, 437 U.S. 678, 687-88 (1978)("A filthy overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); <u>Wright v. McMann</u>, 387

F.2d 519, 526 (2d Cir. 1967) ("civilized standards of humane decency . . . do not permit" an inmate to be placed in a filthy, unheated strip cell and deprived of clothes and basic hygiene items such as soap and toilet paper for a substantial period of time, i.e., 33 days).

The defendant concedes that unsanitary conditions, including lack of access to toilet paper or a properly functioning toilet, may constitute a severe deprivation of a basic human need.  See e.g., LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) (confinement for five days in strip cell with only a pit toilet and without light, a sink or other source of water violated minimum standards of human decency required by Eighth Amendment); Wright, 387 F.2d at 522, 526 (conditions of confinement in strip cell including denial of toilet paper for 33 days violated Eighth Amendment).  The defendant contends, however, that depriving the plaintiff of the use of a bathroom for two short periods of time did not constitute an extreme deprivation of a basic human need.

Courts in this and other circuits have consistently held that an occasional or temporary deprivation of toilet use, does not constitute an extreme deprivation of a basic human need or necessity of life.  See Jones v. Marshall, No. 08 Civ. 0562, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010) (denial of right to use bathroom for 90 minutes did not "establish the existence of an objective injury for purposes of Eighth Amendment claim"); Rogers

10

v. Laird, Civ. No. 9:07-CV-668 (LEK/RFT), 2008 WL 619167, at *3
(N.D.N.Y. Feb. 8, 2008) (denial of use of restroom during three
hour trip to and from court causing inmate to urinate on himself
did not "constitute an extreme deprivation of life's
necessities"); Simpson v. Wall, 2004 WL 720276, at * 3 (W.D. Wis.
Mar. 29, 2004) ("Sitting in one's feces for sixty to eighty miles
cannot be said to present a risk of serious harm."); Bourdon v.
Roney, 2003 WL 21058177, at *10-11 (N.D.N.Y. Mar. 6, 2003) (three
hours without bathroom privileges is not deprivation of minimal
necessities of life); Whitted v. Lazerson, No. 96 Civ. 2746
(AGS), 1998 WL 259929, at * 2 (S.D.N.Y. May 21, 1998) (temporary
deprivation of use of toilet for 90 minutes at most, in the
absence of serious physical injury, did not constitute denial of
necessities of life).

In reaching this conclusion, courts have considered whether
the deprivation of toilet use resulted in unsanitary conditions
that posed a significant risk to the inmate's health.  See Gill,
2005 WL 755745, at *16 (inmate who urinated on himself as result
of denial of use of bathroom during trip to prison failed to
satisfy objective element of Eighth Amendment because denial was
temporary - 70 minutes- and he suffered no injury to his health);
Qawi v. Howard, No. Civ. A. 98-220-GMS, 2000 WL 1010281, at *3-4
(D. Del. Jul. 7, 2000) (denial of use of bathroom for six hours
during which inmate forced to urinate in drinking cup and bowl

and defecate into a paper bag did not constitute sufficiently
serious deprivation because duration of condition was brief and
inmate suffered no significant health risk); Odom v. Keane, No.
95 Civ. 9941, 1997 WL 576088, at *4-5 (S.D.N.Y. Sept. 17, 1997)
(lack of a working toilet in prison cell for approximately 10
hours, absent an allegation that the prisoner risked
contamination by contact with human waste, "does not rise to the
level of cruel and unusual punishment").

Although the plaintiff was forced to sit in pants that were
soiled with feces for up to 30 minutes on the way to court,  he
was permitted to clean himself and change his clothes when he
arrived at the courthouse and before he was required to appear in
court.  Despite the fact that the plaintiff had to sit in urine-
soaked pants for up to 30 minutes on the trip back to Osborn,
there is no evidence to suggest that he was not able to wash
himself and change his clothes after officers escorted him to his
cell.  Furthermore, other than a minor abrasion on his ankle,
there is no evidence to suggest that the plaintiff suffered any
contamination or risk to his health as a result of having to sit
in pants soiled with feces and soaked with urine.  There is no
aspect of the conditions described by the plaintiff that could
satisfy the objective element of the Eighth Amendment standard.
The conditions were temporary and did not constitute an extreme
deprivation of basic human need or the minimal civilized measure

of life's necessities.

The plaintiff fails to create a genuine issue of fact as to whether he can satisfy the objective component of the Eighth Amendment test, so it is not necessary to reach subjective component.  Accordingly, the defendant's motion for summary judgment is being granted on this ground.

### B.   Emotional Distress

The plaintiff asserts that the defendant subjected him to emotional distress and humiliation because he was forced to walk into the courthouse in front of the Deputy United States Marshals in soiled pants and was escorted through a crowded prison gymnasium and housing unit on the way back to his cell at Osborn in urine-soaked pants.  Having granted summary judgment on the plaintiff's sole federal claim, the court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over the plaintiff's state law claims for negligent or intentional infliction of emotional distress.  See Valencia ex rel. Franco v. Lee, 316 F. 3d 299, 305 (2d Cir. 2003)("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims.")(quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

13

**IV.   Conclusion**

For the reasons set forth above, the defendants' Motion for Summary Judgment **(Doc. No. 24)** is hereby **GRANTED.**  The Clerk is directed to enter judgment in favor of the defendant and close this case.

It is so ordered.

Signed this 30th day of March, 2010 at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge

14